## In re Franklin Trust Company

*Saul, Ewing, Remick* and *Saul*, for exceptant.
*Glenn A. Troutman* and *C. P. Wagnor*, contra.

LAMBERTON, J., June 23, 1938.—Some time ago, the Secretary of Banking filed his first and partial account as receiver of Franklin Trust Company, in which the claims of Theodore Prince & Company, aggregating $946.50, were given a depositor's status in part, and the status of a general creditor in part. Exceptions were duly filed and the matter comes before us on a stipulation setting forth all of the facts involved. This stipulation is part of the record and is embodied herein by reference, but we will restate briefly those facts which we think control the question before us.

Within a few days prior to the closing of the Franklin Trust Company, that company received orders from customers for the purchase of four batches of corporate stock. The trust company placed orders for the purchase of these stocks through claimant, a broker. Claimant duly purchased the stocks and notified the trust company. It was agreed that the certificates should be delivered by claimant to the trust company and paid for in cash on delivery. On the morning of October 5, 1931, claimant delivered to the trust company certificates for said shares of stock in the names of other persons, but endorsed in blank, and received from the trust company treasury checks in payment therefor. These checks were duly deposited by claimant, but the trust company never reopened after the close of business on October 5, 1931, and, consequently, the checks were never paid. On October 6, 1931, claimant notified the Secretary of Banking in writing that it claimed the right to repossess said stock certificates but, in spite of this notice, the Secretary of Banking, some two weeks later, delivered the same to the customers of the trust company for whose account the orders had been placed.

It is the contention of claimant that it never lost its lien upon said stock certificates; that it had the right to reclaim the same; that the action of the Secretary of Banking in turning over said certificates to other persons was wrongful; and that claimant should, therefore, be

paid out of the funds in the secretary's hands because of the secretary's wrongful act.

It is agreed that claimant had a lien on the shares of stock to secure payment of the purchase price, but the Secretary of Banking contends that this lien was lost by delivery of the certificates to the trust company. We are aware that the lien of a pledgee is dependent upon his possession of the pledged property and that this lien is generally lost if the property is voluntarily surrendered to the pledgor. We are also aware that there are certain exceptions to this rule, one of which is that the lien is not lost if the delivery by the pledgee to the pledgor is secured by fraud on the part of the pledgor.

In re Reilly Brock & Co., 15 D. & C. 98, was a case in which the facts were quite similar to those now before us. In that case Judge Kun reasoned that a legal fraud was perpetrated upon the pledgee and consequently the pledgee's lien was not lost. We like his reasoning and think it is sustained by the authorities which he cites. But in our opinion this case is so clear that it is not necessary to enter into any legalistic discussion concerning actual fraud, legal fraud, etc. The fact is that the intention of the claimant and of the trust company was that this should be a cash transaction. There was no intention on the part of claimant to surrender certificates except upon the receipt of cash. There was no intention on the part of the trust company to obtain the certificates except upon the payment of cash. Both parties believed that by delivery of the treasurer's checks cash was in fact being paid. When it developed that the treasurer's checks were not as good as cash, claimant had a right to repossess itself of the stock certificates. It gave timely notice of its claim to the Secretary of Banking, but the secretary chose to disregard the same. Since the secretary by his wrongful act has rendered it impossible to return the stock certificates, claimant's loss must be made good from the estate in the secretary's hands.

672

The cost of the stock was $946.50. This was the amount of claimant's lien. If the stocks were not actually of that value at the time when they were converted by the Secretary of Banking, it is possible that the claim should be correspondingly reduced. We will assume, however, that they were of that value unless counsel notify us to the contrary.

And now, to wit, June 23, 1938, the exceptions of Theodore Prince & Company are sustained and the claim of Theodore Prince & Company is allowed in the sum of $946.50 as an administration expense.